# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**GARY ELIE,**
    Petitioner,

vs.                                              Case No. 3:04cv330/MCR/MD

**JAMES V. CROSBY, JR.**
 **and MICHAEL D. ROZOS,**
    Respondents.
_____

## REPORT AND RECOMMENDATION

      This cause is before the court upon an amended petition for writ of habeas corpus (doc. 9) filed pursuant to 28 U.S.C. § 2241.  Respondent filed an answer (doc. 19), to which petitioner has responded (doc. 21).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

      Petitioner is an alien citizen of Haiti who challenges a final order deporting and removing him from the United States to Haiti.  He argues that such order violates Article 3 of the United Nations Convention Against Torture ("CAT").  He alleges the following facts in support of his petition: (1) that he was involved in a revolution in Cite Soleil, Haiti, (2) that as a result of his involvement his father and one of his brothers were killed by "the Government Lavalas and the military," (3) that he returned to Haiti in March of 1997 and was arrested outside the airport, (4) that he was accused of being one of the leaders of the Red Army, and criminally charged

with supplying weaponry to the Red Army and being involved in several attacks against, and murders of, Lavalas party members, (5) that it was Guy Philippe, the former police chief in Haiti, who labeled petitioner a member of the Red Army, (6) that while in jail petitioner was tortured and beaten, (7) that he was released on January 15, 1998 only after his family paid the government $25,000, and (7) that he again returned to Haiti in November of 2001 and "barely escaped" when the same militia discovered he was there. (Doc. 9, p. 3 and Attach.; Doc. 21, p. 1). Petitioner argues that these factors, evidence of which was presented to the IJ and BIA, establish that if he is returned to Haiti he will be tortured or killed.

## BACKGROUND

Petitioner was paroled into this country on December 4, 1991 to seek asylum. He was granted asylum on October 26. 1992. His status was later adjusted to that of lawful permanent resident. (Doc. 19, ex. A, B).[1] In April of 2003, petitioner was convicted in Miami-Dade County, Florida of attempted first degree murder and aggravated battery with a deadly weapon. (Ex. C). He was sentenced to concurrent ten year terms of imprisonment and has a scheduled release date of May 12, 2012. (Ex. K). On or about June 6, 2003, the now United States Citizenship and Immigration Services served petitioner with a notice to appear, charging that he was subject to removal under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("Act") due to his conviction of an aggravated felony, and pursuant to section 237(a)(2)(c) of the Act due to his firearm conviction. (Ex. D). *See also* 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227 (a)(2)(c). On November 12, 2003 the presiding immigration judge found petitioner to be removable pursuant to both charges. (*Id.*). Thereafter, petitioner submitted an Application for Asylum and for withholding of Removal. (Ex. E). On March 18, 2004 the presiding immigration judge ("IJ") concluded that the issue of removeability had been resolved with clear and convincing evidence, and that petitioner was removable. (Ex. F). The IJ further found that petitioner did not

---

[1] Hereafter, all references to exhibits will be to those attached to Doc. 19, unless otherwise noted.

qualify for the only relief potentially available to him, withholding or deferral of removal pursuant to CAT. (*Id.*). The IJ supported his decision with the following findings:

> The Court finds in this case that [Mr. Elie] has presented evidence, which would indicate that he was indeed arrested by police authorities in Haiti in 1997. [Mr. Elie] indicates that he was unlawfully arrested and detained and that false accusations were made against him. Pursuant to the information contained in the [Haitian] court report, which he has submitted, it would indeed seem that the [Haitian] court agreed, at least that the police had been unable to present sufficient evidence to further detain [Mr. Elie] or to bring him to trial. From the evidence that [Mr. Elie] himself has submitted, then, it would appear that the Haitian courts were able to operate effectively and within the accordant of the law. The courts of Haiti have long been accused of not being able to function effectively and to be under the thumb of Lavalas and former President Jean-Bertrand Aristide. However, it would seem in this case that the court did function in an independent fashion. It reviewed the evidence presented against [Mr. Elie] by the police and determined that there was insufficient evidence to charge him with any crime and, therefore, ordered his release which did, in fact, occur.
>
> . . . .
>
> The Court finds in this case that the government of Haiti is not likely to harm [Mr. Elie], both based on their past behavior with him in releasing him after charges were unable to be sustained, and as a result of the change in government in Haiti in that Lavalas is no longer in charge of the country.
>
> The Court finds in this case that Mr. Guy Philippe does not hold any official position in the government. There is also no evidence to indicate that he acts with the consent or acquiescence of the government. While [Mr. Elie] may indeed have some resentment of Mr. Philippe's prior activities against him, the Court finds in this case that the individual he fears does not act on behalf of the Haitian government at the present time, and therefore, pursuant to the holding of the Board of Immigration Appeals in *Matter of S-V-*, that [Mr. Elie] is ineligible for protection under Article 3 of the Convention [A]gainst Torture for his claimed fear of Mr. Guy Philippe.
>
> There is also evidence that has been presented in the past which would indicate that the government of Haiti often detains individuals who have been deported to that country from the United States based on criminal convictions. However, there is no indication that the

>individuals who are detained by the government, sometimes for long or even indefinite periods of time, are being detained for the purpose of inflicting torture on them.  Indeed, there is also evidence to indicate that the detention of individuals upon their return to Haiti is not taking place in the numbers that it had been originally.
>
>Consequently then, although the Court finds that [Mr. Elie] has provided detailed testimony regarding the nature of his past visits in Haiti, the Court does not find that he has sustained his burden of proof.  The burden of proof in a Torture Convention case is a high one.  The Court here does not doubt [Mr. Elie] may suffer harassment or some type of problems upon his return as a result of his prior activities in Haiti.  However, the Court does not find that the evidence is sufficient to show that at the present time it is "more likely than not" that he would be tortured by the Haitian government, as that term is used in the Torture Convection, and consequently his request for protection under article 3 is hereby denied.

(Ex. F, pp. 9-12).[2]  This decision was affirmed, without opinion, by the Board of Immigration Appeals ("BIA") on June 30, 2004.  (Ex. H).  Petitioner did not file a petition for review in the Eleventh Circuit, but on July 29, 2004 commenced this habeas corpus action.

The factual averments petitioner presents in this petition are the same as those to which he testified at the hearing before the IJ.  (*See* Ex. F, pp. 5-9). Petitioner argues that this evidence establishes that he will be subjected to torture and possible death if deported to Haiti; therefore, the IJ and BIA erred in concluding that he did not qualify for CAT relief.  Petitioner further argues that he was deprived of due process when the IJ and BIA took "administrative notice" of changes in Haiti's social and political conditions.  As relief, petitioner requests that "the ruling be reversed and his asylum status be reinstated."  (Doc. 9, Attach.).

## DISCUSSION

Federal courts have jurisdiction to entertain § 2241 petitions challenging removal orders based on CAT.  *Cadet v. Bulger*, 377 F.3d 1173, 1182-83 (11th Cir.

---

[2]A summary of the evidence presented at the hearing, including petitioner's testimony, is contained in the IJ's order.  (Ex. F, pp. 4-9).

2004). The scope of review, however, is limited -- it "includes constitutional issues and errors of law, including both statutory interpretations and application of law to undisputed facts or adjudicated facts," but "does not include review of administrative fact findings or the exercise of discretion." *Id.* at 1184.

Accordingly, to the extent petitioner challenges the IJ's and BIA's fact findings about the sufficiency of his evidence and the likelihood of his being tortured if returned to Haiti, such claims are beyond this court's review. *Cadet*, 377 F.3d at 1192 ("To some extent, Cadet challenges the administrative fact findings about the sufficiency of his evidence and the likelihood of his being tortured if returned to Haiti, and such claims are beyond our § 2241 habeas review of removal orders denying CAT claims."). However, to the extent petitioner challenges the IJ's and BIA's conclusion that the conditions to which he would be subjected upon return to Haiti do not fall within CAT's legal definition of "torture," such claim is within this court's jurisdiction. *Id.* The court's analysis of this issue is deferential: if the language of the applicable statutory provision clearly outlines its congressional purpose, "then interpreting courts and administrative agencies 'must give effect to the unambiguously expressed intent of Congress.'" *Dawson v. Scott* 50 F.3d 884, 886 (11th Cir. 1995) (quoting *Chevron USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). If, however, "'the statute is silent or ambiguous with respect to the specific issue,'" a reviewing court must defer to an agency's reasonable interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 886-87 (quoting *Chevron*, 467 U.S. at 843, 844, 104 S.Ct. at 2782).

Article 3 of CAT provides, in pertinent part, that "[n]o State Party shall expel, return . . . or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S.Treaty Doc. No. 100-200 (1988), 1465 U.N.T.S. 85, Art. 3, § 1. Federal regulations define "torture," for purposes of entitlement to CAT relief, as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining

**from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.**

8 C.F.R. § 208.18(a)(1). The regulations expressly state that "[t]orture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 208.18(a)(2). "Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions." 8 C.F.R. § 208.18(a)(3). Lawful sanctions including "judicially imposed sanctions and other enforcement actions authorized by law, including the death penalty," but "do not include sanctions that defeat the object and purpose of the Convention Against Torture to prohibit torture." *Id.* "In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. . . . 8 C.F.R. § 208.18(a)(5).

The regulations require that protection be granted under CAT whenever it is determined that an "alien is more likely than not to be tortured in the country of removal." 8 C.F.R. § 208.16(c)(4). The burden of proof is on the CAT applicant "to prove by objective evidence that it is 'more likely than not' that he or she will be tortured if removed." *Cadet*, 377 F.3d at 1180 (quoting *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1303 (11th Cir. 2001) and 8 C.F.R. §208.16(c)(2)).

In the instant case, the adjudicated facts are that although petitioner was arrested and detained by the Haitian police in 1997 on charges which petitioner contends were false, petitioner was brought before a tribunal. The Haitian court required the police to show why petitioner should be further detained or brought to trial. After determining that the evidence against petitioner was insufficient, the court ordered petitioner's immediate release. Additionally, a change in government in Haiti has resulted in the Lavalas party no longer being in charge. Moreover, the particular person with whom petitioner has experienced problems, Lavalas party member Guy Philippe, is no longer the police chief. He does not hold any official

position in the government, nor does he act with the consent or acquiescence of the new government.  Based on these findings, it was not an unreasonable interpretation of the immigration laws for the IJ and BIA to conclude that the conditions of which petitioner complained did not amount to torture.

As previously discussed, for an act to constitute "torture" under CAT and its implementing regulations, it must be: "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions."  *Cadet*, 377 F.3d at 1192 (citing 8 C.F.R. § 208.18(a); *Elien v. Ashcroft*, 364 F.3d 392, 398 (1st Cir. 2004); *In re J-E-*, 23 I. & N. Dec. 291 (BIA 2002)).  The undersigned agrees with the IJ and BIA's legal analysis that petitioner's arrest and temporary detention do not amount to "torture" under CAT because (1) the Haitian judicial process acts effectively and in an independent fashion to adequately protect petitioner from unlawful detention; (2) the Haitian government is no longer controlled by the political party (Lavalas) which was antagonistic to petitioner; and (3) Guy Philippe is no longer a public official, nor does he act with the consent or acquiescence of members of the present Haitian government.  At most, petitioner has established that it is more likely than not that he will experience harassment from a private party upon his return to Haiti, but such suffering is not the type of government-sanctioned pain and suffering intended to be reached by CAT's removal provisions.

As to petitioner's second claim, that he was deprived of due process when the IJ and BIA took "administrative notice" of changes in Haiti's social and political conditions, the court finds such contention without merit.  The record demonstrates that the IJ and BIA did not take "administrative notice" or judicial notice of any such fact.  It's findings concerning changes in Haiti's social and political conditions were based on documentary evidence submitted by petitioner.  (*See* Ex. F, pp. 4-5).[3]

---

[3]To the extent petitioner takes issue with the IJ *sua sponte* denying relief on the additional basis that the Haitian policy of detaining criminal deportees for an indefinite period does not constitute "torture" under CAT, such challenge provides no basis for habeas corpus relief.  The

## CONCLUSION

The BIA's conclusions in petitioner's case are reasonable interpretations of the immigration laws and regulations defining "torture." Therefore, this court defers to them and concludes that petitioner is not entitled to relief under Article 3 of CAT.

Accordingly, it is respectfully RECOMMENDED:

That the amended petition for writ of habeas corpus (doc. 9) be DENIED, and the clerk be directed to close the file.

At Pensacola, Florida, this 13th day of September, 2005.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

---

**Eleventh Circuit has found, as a matter of law, that that Haitian policy is not "torture" within CAT. *Cadet*, 377 F.3d at 1192-93.**